1

2 McHUGH & McHUGH, LLP
STEVEN J. McHUGH, #145857
3 2196 Lake Tahoe Boulevard,
South Lake Tahoe CA 96150-6687
4 stevenmchugh@sbcglobal.net
Tel: (530) 544-3006 • Fax: (530) 544-3517
5 Attorneys for Plaintiff WILLIAM J. BROWN, JR.

6

7

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11

12 WILLIAM J. BROWN, JR.,              )    CIVIL Case Number: _____
                          Plaintiff,  )
13                                     )
                   v.                  )    COMPLAINT FOR PERSONAL INJURY:
14                                     )
   BIOMET, INC., a foreign corporation doing )  Count One:    Negligence
15 business in California;             )    Count Two:    Products Liability
   DOE BUSINESS ENTITIES 1-10; and DOE )   Count Three:  Strict Products Liability
16 INDIVIDUALS 1-10,                   )
                          Defendants.  )
17 _____    )    SUMMONS

18

19

20            COMPLAINT   FOR   PERSONAL   INJURY

21 A.    JURISDICTION:

22       The bases of Federal Court jurisdiction are as follows.

23       This Court has complete diversity jurisdiction, due to complete diversity of citizenship of both

24 parties, pursuant to 28 U.S.C. Section 1441(b).

25       This Court therefore has original jurisdiction over this case pursuant to 28 U.S.C. Section

26 1332(a)(1).

27       This Court also has subject matter jurisdiction because the amount in controversy, exclusive of

28 interest and costs, exceeds $75,000.00.

McHUGH & McHUGH, LLP
2196 Lake Tahoe Blvd., Ste. B
So. Lake Tahoe CA 96150-6687
stevenmchugh@sbcglobal.net
Tel: (530) 544-3006
Fax: (530) 544-3517

-1-

Complaint for Personal Injury

1

2

**B.     THE PARTIES:**

1.      Plaintiff, William Jackson Brown, Jr., by and through undersigned counsel, is a California resident (hereafter "Plaintiff").

2.      Defendant BIOMET, INC., is a foreign corporation registered in, doing business in,  and domiciled in the State of Indiana, with its corporate headquarters in Warsaw, Indiana, i.e., Biomet Inc. is a citizen of the State of Indiana (hereafter, "Biomet" or Defendant).

3.      Defendant DOE Business Entities 1-10 are foreign or domestic companies, corporations, partnerships, or other business entities who, in some way, are responsible, in whole or in part, for Plaintiff's injuries and damages, as to testing, inspection, research, manufacture, sale, production, design, shipment, storage, transportation, implantation, use, delivery, or otherwise, of the metallic parts, screws, bolts, etc., that were installed in Plaintiff's spine in surgery at Stanford Hospital on or about January 12, 2009, and which became known to be defective, failed, broken, or otherwise unsafe, below-standard, and negligently designed, manufactured, installed, shipped, transported, used, etc., via diagnostic imaging studies in or about August-September, 2012, and via hardware removal and replacement surgery by Dr. Charles M. Sonu, M.D., on December 28, 2012.  These Defendants are not specifically known, identified, and named at this time, however, will be identified by subsequent Doe amendment papers when and if they become so known.

4.      Defendant DOE Individuals 1-10 are persons, individuals, or others,  who, in some way, are responsible, in whole or in part, for Plaintiff's injuries and damages, as to testing, inspection, research, manufacture, sale, production, design, shipment, storage, transportation, implantation, use, delivery, or otherwise, of the metallic parts, screws, bolts, etc., that were installed in Plaintiff's spine in surgery at Stanford Hospital on or about January 12, 2009, and which became known to be defective, failed, broken, or otherwise unsafe, below-standard, and negligently designed, manufactured, installed, shipped, transported, used, etc., via diagnostic imaging studies in or about August-September, 2012, and via hardware removal and replacement surgery by Dr. Charles M. Sonu, M.D., on December 28, 2012.  These Defendants are not specifically known, identified, and named at this time, however, will be identified by

McHUGH & McHUGH, LLP
2196 Lake Tahoe Blvd., Ste. B
So. Lake Tahoe CA 96150-6687
stevenmchugh@sbcglobal.net
Tel: (530) 544-3006
Fax: (530) 544-3517

-2-

Complaint for Personal Injury

1

2

3 subsequent Doe amendment papers when and if they become so known.

4         **B.**      **TORT CAUSES OF ACTION:**

5                    **COUNT ONE:**     **NEGLIGENCE**

6        5.      Plaintiff realleges and incorporates herein each of the preceding paragraphs as if they were

7 separately set forth below.

8        6.      On or about January 12, 2009, Plaintiff underwent lower lumbar spinal surgery at Stanford

9 Hospital.

10        7.      Defendant, Biomet Inc. (hereafter, "Biomet", or Defendant), is a manufacturer, maker,

11 designer, shipper, seller, and producer of metallic surgical implantation parts and devices, including the

12 parts and devices involved in this case.

13        8.      At that time, various Biomet parts and screws were installed in Plaintiff's spine.

14        9.      Said parts included "Implant Name" and description on the surgery report "M64000-

15 LOG40951", Biomet metallic screws, and Serial Numbers Model/Cat no: 64000 (4 Endcaps), 64001 (6

16 Locknuts), and for the actual screws that are key to this action, Serial Numbers 64645 (4 screws), and

17 64640 (2 more screws) [hereafter, "the products", or "the screws"].

18        10.      Plaintiff was the victim of two (2) rear-end motor vehicle accidents (MVAs), that occurred

19 on January 3, 2011, and on March 27, 2011.

20        11.      Defendant Biomet's screws and other parts should not have failed in or at either or both of

21 these MVAs, had they been safely and properly tested, manufactured, designed, sold, stored, etc., however,

22 partially as a result of said impacts, these products did begin failing and deteriorating in 2011 and 2012,

23 which was only known to Plaintiff and his doctors in late 2012.

24        12.      Unknown to Plaintiff and his Stanford surgeons when these parts were used and implanted

25 in Plaintiff's back in January, 2009, however, was the fact that said screws, especially and at least one or

26 two of the six screws noted above, were defectively made, manufactured, designed, sold, stored, shipped,

27 or otherwise produced by Biomet, below-standard, and unsafe and unreliable.

28        13.      Biomet had and owed certain duties of care to Plaintiff.

McHUGH & McHUGH, LLP
2196 Lake Tahoe Blvd., Ste. B
So. Lake Tahoe CA 96150-6687
stevenmchugh@sbcglobal.net
Tel: (530) 544-3006
Fax: (530) 544-3517

Complaint for Personal Injury

14.     Said duties of care included, but were not limited to, the duty to safely and properly abide by all relevant state and federal laws, rules, guidelines, and standards in its research, testing, inspection, manufacture, design, production, sales, shipment, transmission, storage, and all other aspects of its production of the metal hardware screws implanted in Plaintiff's lower lumbar spine.

15.     Defendant Biomet violated these duties of care.

16.     These violations of its duties of care legally caused, in whole or in part, Plaintiff's injuries and damages.

17.     These violations of its duties of care proximately caused, in whole or in part, Plaintiff's injuries and damages.

18.     Plaintiff suffered, as a result of Defendant Biomet's negligence, pain, suffering, injuries to his back, spine, and other body parts, repeated surgery to remove said defective, failed implanted screw products on 12-28-12, and other injuries, and general and special, non-economic and economic, damages, as shall be shown at trial, in excess of $75,000.00.

19.     For the above reasons, Bill Brown suffered great pain, starting in 2011 and continuing throughout 2012, and learned, only in September and December 2012, that the implanted Biomet screws i.e., apparently one or two of them, had failed, loosened, destabalized, broke, and were found to be defective, with parts of the metal screws sheared-off, flaked-off, disintegrated, deteriorated, failed, shaved off, weakened,  and actually broken, causing the Plaintiff great pain and suffering, which is abnormal, defective, dangerous, unsafe, and below-standard in the industry.

20.     Defendant Biomet had failed to warn Plaintiff, prior to the implantation of its hardware screw parts in January, 2009, of its lack of proper testing, inspection, manufacture, and production protocols, research, and other safety issues.

21.     Defendant Biomet had failed to warn Plaintiff, prior to the removal of the implanted screw hardware parts in surgery by Dr. Sonu on December 28, 2012, of  its lack of proper testing, inspection, manufacture, and production protocols, research, and other safety issues.

22.     Defendant Biomet failed to notify or warn Plaintiff or his doctors in any way, ever, about

McHUGH & McHUGH, LLP
2196 Lake Tahoe Blvd , Ste B
So. Lake Tahoe CA 96150-6687
stevenmchugh@sbcglobal.net
Tel: (530) 544-3006
Fax: (530) 544-3517

-4-

1

2

3  the deficiencies and defects in this screws, at any relevant time.

4    23.    Defendant Biomet's safety inspection procedures actually followed, as to these particular

5  metal screws, Serial Numbers 64640 and 64645, were negligently designed, implemented, followed,

6  practiced, recorded, supervised, monitored, and otherwise actually managed by Defendant Biomet and its

7  agents, employees, and staff.

8    24.    Said Biomet screw products were removed by spinal surgeon Dr. Charles Sonu, MD, via

9  reparative surgery on Plaintiff that was done on December 28, 2012.

10    25.    Said surgery was predated by imaging studies indicating, but not confirming, the defective

11  screws and unsafe, dangerous, below-standard implantation hardware products, on or about September 18,

12  2012.

13    26.    Plaintiff's surgeon for the hardware removal surgery of 12-28-12, Dr. Sonu, M.D., will

14  testify that he suspected the products had failed as early as late August, 2012; ordered imaging studies that

15  were done on September 18, 2012, which supported that suspicion; and confirmed his diagnosis when he

16  actually saw, looked at, and surgically removed the screw parts via his surgery on Plaintiff performed on

17  December 28, 2012.

18    27.    Plaintiff is in possession of said hardware, which he received from the surgery lab that

19  worked with Dr. Sonu as to the 12-28-12 surgery.

20    28.    Defendant violated California Civil Code Section 1714, i.e., California's General

21  Negligence law.

22    29.    Defendant violated the industry standards of care, and committed negligent acts and

23  omissions, in violation of state and federal common law and case standards.

24    30.    For these and other reasons as discovery will show, and as Defendants's records, testing,

25  safety and design and manufacture protocols and standards and recalls will show in this litigation, the

26  products were unsafe and did not act and perform up to standard, causing Plaintiff to suffer great pain and

27  injury, partial disability, and other general, special, consequential damages, as will be shown at trial.

28  ///

McHUGH & McHUGH, LLP
2196 Lake Tahoe Blvd , Ste B
So. Lake Tahoe CA 96150-6687
stevenmchugh@sbcglobal.net
Tel: (530) 544-3006
Fax: (530) 544-3517

Complaint for Personal Injury

## COUNT TWO: PRODUCTS LIABILITY

31. Plaintiff realleges and incorporates herein each of the preceding paragraphs as if they were separately set forth below.

32. The products involved were not altered, modified, damaged, or otherwise changed between the time Biomet made, designed, manufactured, sold, and shipped them to Stanford Hospital, and the time they were implanted in Plaintiff's spine on January 12, 2009.

33. Defendant Biomet was engaged in the business of manufacturing and selling the screw products in question.

34. The screws in question were inherently defective when implanted in Plaintiff's body.

35. The products involved were not altered, modified, damaged, or otherwise changed between the time Biomet made, designed, manufactured, sold, and shipped them to Stanford Hospital, and the time they were removed via surgery on December 28, 2012, except, to a limited extent, by the MVAs of 1-3-11 and 3-27-11, which should not have caused the products to fail, or begin failing, had the products been safely and properly designed, manufactured, tested, and the like, by Defendant Biomet.

36. The screw products were defective, unsafe, and below standard when implanted in Plaintiff's body in January, 2009, and Defendant did not warn Plaintiff of any such problems.

37. The screw products in question were used as they were intended to be used, when implanted in Plaintiff's body in January, 2009.

38. The car accidents (MVAs) on 1-3-11 and on 3-27-11 were not of sufficient force to have altered, broken, damaged, or changed the screws in question, had said screws been properly and safely designed, manufactured, sold, stored, and shipped, etc. by Defendant Biomet.

39. The product screws in question were abnormally and unsafely designed and produced and made, and because of this, they sheared-off, shredded, flaked off, were weak, became weaker, came apart, broke, disintegrated, failed, and did not otherwise perform as intended and expected, causing Plaintiff's injuries and damages.

McHUGH & McHUGH, LLP
2196 Lake Tahoe Blvd , Ste B
So. Lake Tahoe CA 96150-6687
stevenmchugh@sbcglobal.net
Tel: (530) 544-3006
Fax: (530) 544-3517

40.    For these and other reasons as discovery will show, and as Defendant's records, testing, safety and design and manufacture protocols and standards and recalls will show in this litigation, the products were unsafe and did not act and perform up to standard, causing Plaintiff to suffer great pain and injury, partial disability, and other general, special, consequential damages, as will be shown at trial.

## COUNT THREE: STRICT PRODUCTS LIABILITY

41.    Plaintiff realleges and incorporates herein each of the preceding paragraphs as if they were separately set forth below.

42.    The screw products in question were unreasonably dangerous and in a defective condition when implanted in the Plaintiff's body in 2009.

43.    The screws in question were inherently defective at that time.

44.    The screw products in question failed, broke, and otherwise performed poorly and below standard during 2011 and 2012, thus causing Plaintiff's injuries and damages, necessitating and resulting in Plaintiff's major spinal surgery of December 28, 2012.

45.    The products in question were defectively designed, manufactured, tested, inspected, stored, shipped, sold, or otherwise negligently and deficiently made and given to the Stanford Hospital, and its doctors who installed same in Plaintiff's spine in January, 2009, and at that time, were in the same condition as they were when they left the defendant Biomet's care, custody, and control.

46.    The products in question were used as they were intended to be used when implanted in Plaintiff's spine in January 2009 at Stanford Hospital.

47.    No medical malpractice or other intervening act, practice, or negligence, proximately and legally caused said products to be defective, fail, and not perform as Plaintiff had expected them to perform.

48.    The car accidents Plaintiff was involved in, in January, 2011 and March, 2011, and the impacts he suffered therein, should not have caused these products to fail, had these Biomet products been safely and properly designed, tested, manufactured, stored, sold, shipped, and otherwise created and produced by Defendant Biomet.

McHUGH & McHUGH, LLP
2196 Lake Tahoe Blvd., Ste. B
So. Lake Tahoe CA 96150-6687
stevenmchugh@sbcglobal.net
Tel (530) 544-3006
Fax: (530) 544-3517

-7-
Complaint for Personal Injury

49.     Defendant Biomet failed and neglected to warn Plaintiff of these defects and lack of ability to perform properly, as to these screw product implants, at all relevant times.

50.     Plaintiff has suffered injuries and damages in amounts that will be shown at trial.

51.     Expert witness metallurgic studies and testing will show that these products were defectively designed, made, stored, sold, shipped, etc., when these products are subjected to such examination.

52.     Plaintiff's surgeon for the hardware removal surgery of 12-28-12, Dr. Sonu, M.D., will testify that he suspected the products had failed as early as late August, 2012; ordered imaging studies that were done on September 18, 2012, which supported that suspicion; and confirmed his diagnosis when he actually saw, looked at, and surgically removed the screw parts via his surgery on Plaintiff performed on December 28, 2012.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

McHUGH & McHUGH, LLP
2196 Lake Tahoe Blvd., Ste. B
So. Lake Tahoe CA 96150-6687
stevenmchugh@sbcglobal.net
Tel. (530) 544-3006
Fax: (530) 544-3517

-8-

Complaint for Personal Injury

## REQUEST   FOR   RELIEF

Plaintiff therefore respectfully asks this Court, after trial, to find Defendant Biomet liable, and order that Defendant pay to Plaintiff the following damages:

1.      All economic, special, consequential, and related other out of pocket costs, medical bills,

expenses, costs of medical treatment, and other related damages;

2.      All non-economic, general, pain and suffering, loss of enjoyment of life, trauma, anxiety,

grief, disability, and other, related damages;

3.      Costs of suit as allowed by law;

4.      Interest as allowed by law; and

5.      All other relief, damages, and costs as the Court may deem fair and appropriate, allowed

by law.


DATED:      June 30, 2014                                       

                                             Steven J. McHugh, Esq.,
Debra A. McHugh, Esq.,
McHugh & McHugh, LLP
2196 Lake Tahoe Blvd.,
South Lake Tahoe, CA.   96150
TEL:   (530)   544-3006
FAX:   (530)   544-3517
Email: stevenmchugh@sbcglobal.net
COUNSEL for PLAINTIFF, Bill Brown

McHUGH & McHUGH, LLP
2196 Lake Tahoe Blvd., Ste. B
So. Lake Tahoe CA 96150-6687
stevenmchugh@sbcglobal.net
Tel: (530) 544-3006
Fax: (530) 544-3517

-9-

Complaint for Personal Injury